# STATE *v.* PAYNE

No. 2902

February 5, 1931.                    295 P. 770.

*M. A. Diskin,* Attorney - General, *Wm. J. Forman,* Deputy Attorney-General, and *Howard E. Brown,* District Attorney, for the State:

*W. R. Reynolds,* for Respondent:

## OPINION

By the Court, SANDERS, J.:

The district attorney of Lander County filed an information in the court below against A. A. Payne, in two counts, one for offering for sale and the other for selling to Mrs. Maggie Shovelin the meat of a neat cattle in violation of the provisions contained in an act approved March 19, 1929, chapter 76, Stats. 1929, p. 111. The defendant's demurrer to each count was sustained, the information was dismissed, and the defendant discharged. The state appealed.

The demurrer to each count was sustained solely upon the ground that the statute is unconstitutional and void, because in conflict with section 17 of article 4 of the constitution, which declares "each law enacted by the legislature shall embrace but one subject, and matters properly connected therewith, which subject shall be briefly expressed in the title."

To a proper understanding of the court's ruling on the demurrer it is necessary to review the statute. The statute is entitled "An Act to provide for the inspection of hides, providing compensation therefor, and other matters relating thereto."

Section 1 provides: "Hereafter every person before selling the meat of any neat cattle, shall have the hide thereof, with ears attached, inspected for brands and marks, and the carcass or part thereof desired to be sold, stamped as provided herein, by some sheriff, deputy sheriff, constable, deputy constable, justice of the peace, or inspector of the state board of stock commissioners."

Section 2 makes it the duty of the officers named in section 1 and the inspectors of the state board of stock commissioners to inspect such hides and stamp such carcasses or parts thereof in accord with the act.

Section 3 provides the mode and manner of inspection and for the record to be kept thereof.

Section 4 provides that: "As evidence of inspection the inspecting officer shall remove one ear from the hide inspected and place on the outside in the case of skinned carcasses and the inside in the case of unskinned carcasses of at least each quarter of any carcass or part carcass presented for inspection the imprint in indelible ink of the official inspection stamp authorized to be adopted, supplied by, and used under instructions and authority of the state board of stock commissioners by this act."

Section 5 provides that the state board of stock commissioners are authorized and empowered to supervise the operation of the act.

Sections 6 and 7 read as follows:

Section 6. "Hereafter it shall be unlawful for any person to offer for sale or sell the meat of any neat cattle without first having the hide thereof· and the carcass or parts of carcass concerned inspected, marked and stamped as provided for herein."

Section 7. "It shall be unlawful for any person to buy the meat of any neat cattle in quantities of a quarter of a carcass or more, except the carcass or part carcass thereof bears from the personal observation of such person the inspection stamp provided for herein."

Section 8 provides that the inspection of hides and meat as provided for in the statute is restricted at county seats to sheriffs or deputy sheriffs or inspectors of the state board of stock commissioners, and, excepting regular inspectors of the state board of stock commissioners, those authorized to make inspections shall be, unless otherwise ordered by the state board of stock commissioners, entitled to charge and receive for such inspection a fee of 25 cents.

Section 9 provides that the provisions of the act shall not apply to the sale or purchase of neat cattle slaughtered and entering the channels of trade through official establishments under the supervision of the United States Department of Agriculture and bearing the official United States government stamp indicating such inspection.

Section 10 reads as follows: "Any person who shall violate the provisions of this act, or do or perform any act or thing in this act declared to be unlawful, shall be deemed guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison of the State of Nevada not less than one year nor more than fourteen years."

■■■ With this review of the law we are to inquire whether the title of the act conforms to the constitutional requirement that each law enacted by the legislature shall embrace but one subject, and matter properly connected therewith. The purposes sought to be accomplished by this clause of the constitution have been declared in so many decisions of this court, both early and late, that no time need be spent in their review. We may, however, at the outset, state that commentators and judges concede that the main test of the application of the clause to a particular statute is whether the title is of such a character as to mislead the public and the members of the legislature as to the subjects embraced in the act, for the reason that the public and the members of the legislature must necessarily largely depend for their knowledge of the purposes of the proposed legislation upon the title under which they are presented. State v. Commissioners, 22 Nev. 399, 41 P. 145; Ex Parte Mantell, 47 Nev. 95, 216 P. 509. Another important test is that the provisions of the act must correspond with the subject expressed in the title. State v. Commissioners, supra; People v. Parks, 58 Cal. 635. The courts say, however, that, if the numerous provisions contained in an act have one general subject which is indicated by the title, and are logically germane to the subject expressed in the title, the act is not obnoxious to the constitutional requirement that each law enacted by the legislature shall embrace but one subject and matter properly connected therewith. Galeppi v. C. Swanston & Son (Cal. App.), 290 P. 116, 119. The constitutional requirement, though mandatory, must be liberally construed, lest meritorious legislation be declared void by reason of inartificiality in the title. In Re Calvo, 50 Nev. 125, 253 P. 671; State v. Ah Sam,

15 Nev. 27, 37 Am. Rep. 454. The rule of liberal construction, however, cannot be extended to the point of nullification, even though the legislative will has assumed the form of a law which, in this instance, is a law apparently designed for the protection of cattle from theft. As pointed out in State v. State Bank & Trust Co. (on rehearing), 31 Nev. 472, 105 P. 567, there is a wide difference between liberal construction and nullification. Whatever the object and scope of the legislation may be, courts would fail in their most important function if they did not follow the mandates of the higher law, keeping in mind that every statute is presumed to be constitutional and every intendment is in favor of its validity.

The act under consideration is entitled "An Act to provide for the inspection of hides, providing compensation therefor, and other matters relating thereto."

Undoubtedly the title indicates but one general subject. As expressed in the title, the whole object of the legislation is to provide for the inspection of hides and matters necessarily or properly related thereto. Looking beyond the title to the provisions of the act, it will be found that the act is made up of an entirely different subject, namely, the sale of meat of neat cattle, and that its object was to make it a penitentiary offense to offer for sale or sell the meat of such cattle without first having the hide thereof and the carcass or part of carcass intended to be sold inspected, marked, and stamped as provided in the act.

It is suggested that the subject of the unlawful sale, offer of sale, or purchase of the meat of any neat cattle, as provided in sections 6 and 7 of the act, conforms its provisions to the constitutional requirement, for the reason that the subject of unlawful sale of the meat of neat cattle is logically germane to the general subject expressed in the title, inspection of hides. To a layman who deals in hides or to an owner of neat cattle who desires to sell the same there is nothing in the subject of the unlawfulness to indicate that the subject expressed in the title to provide for the inspection of hides was to

be extended to the sale of the meat of any neat cattle. There is nothing in the title of the act which suggests or gives any intimation, knowledge, or notice of an intention to make it unlawful and punishable as a felony to offer for sale or to sell or purchase the meat of neat cattle, except upon compliance with all the numerous provisions of the act. The act, in truth, may have passed the legislature under colors that gave no notice of its real character to those to be affected by it. If the subjects were germane to the subject expressed in the title and adapted to the accomplishment of the object of the act, they may have properly been included in the title by reasonable reference, but they were not. The truth is that the real subject of the legislation is not stated in the title at all. That this is the fact is easily shown by the consideration of the effect of the statute.

To our minds, it is quite clear that under the circumstances the title of the act is well calculated to actually mislead the public and the members of the legislature by inducing the belief that the purpose of the law was restricted to the one subject expressed in its title. For these reasons, we conclude that the title of the act is not a fair indication of the measures enacted, and that the act itself, when measured by its title, is well calculated to actually mislead, not only interested parties, but also all persons concerned in the general purpose and scope of the act. In other words, the act is wanting in that unity of title and subject necessary to a constitutional law.

Entertaining these views, we conclude that the demurrer to each count of the information charging the accused with the violation of the several provisions of the act was properly sustained.

The judgment is affirmed.